UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTINA M. KELLY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-2668-B |
| | § | |
| QUICKEN LOANS INC., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Quicken Loans Inc.'s Partial Motion to Dismiss Plaintiff's First

Amended Complaint (Doc. 17). Defendant moves to dismiss most of Plaintiff Christina M. Kelly's

claims based upon its argument that Defendant was not engaging in debt collection as alleged by

Plaintiff. Because the Court rejects this argument, the Court **DENIES** Defendant's motion (Doc. 17)

insofar as it seeks dismissal of Plaintiff's claims on this basis. But the Court **GRANTS** Defendant's

motion (Doc. 17) to the extent it seeks dismissal of Plaintiff's claim under Texas Finance Code

§ 392.304(a)(8) based on her insufficient allegations, and the Court **DISMISSES** this claim

**WITHOUT PREJUDICE**.

I.

BACKGROUND[1]

This dispute arises from communications between a creditor and debtor amidst bankruptcy

proceedings. On February 14, 2008, Plaintiff Christina M. Kelly executed a note secured by a first

---

[1] The Court draws the facts from Plaintiff's first amended complaint (Doc. 15). Any contested fact
is identified as the contention of a particular party.

lien on her homestead ("Property") with Charles Schwab Bank. *See* Doc. 15, First Am. Compl. (FAC), ¶ 12. The same day, she also received a home equity loan secured by a second lien on the Property. *Id.* Though Schwab Bank was the creditor on these two accounts, Defendant Quicken Loans Inc. serviced the accounts. *Id.* ¶¶ 1, 12.

On February 12, 2018, Plaintiff filed for Chapter 7 bankruptcy in the Northern District of Texas. *Id.* ¶ 11. In her bankruptcy petition, Plaintiff listed both accounts serviced by Defendant as secured claims. *Id.* ¶ 12. The account for the note, she stated, had a balance of $269,000, while the account for the home equity loan had a balance of $80,000. *Id.* Along with her petition, Plaintiff filed a statement of intention, indicating that "she was surrendering the Property securing the debt on the [accounts at issue.]" *Id.* ¶ 15. Plaintiff had already permanently vacated the property in 2015. *Id.*

On February 15, 2018, Defendant, as a creditor on the accounts, received notice of Plaintiff's bankruptcy case; the automatic stay imposed by the bankruptcy proceedings; and the fact that Plaintiff was seeking a discharge of the debt on the accounts. *Id.* ¶ 17. Further, on April 12, 2018, following an unopposed motion by Defendant, the bankruptcy court lifted the automatic stay as to the home equity loan account, thereby "allow[ing] [Defendant] to take possession of the Property and proceed with foreclosure proceedings against it[.]" *Id.* ¶¶ 21–22. Finally, on May 23, 2018, the bankruptcy court entered a discharge order, absolving Plaintiff from any liability on Defendant's secured claims and prohibiting personal collection on those claims. *Id.* ¶¶ 23–24. Defendant was sent a notice of the discharge order on May 24, 2018. *Id.* ¶ 25.

Despite the automatic stay and the discharge order, Plaintiff contends that, through various communications, Defendant repeatedly attempted to collect on her debt. *Id.* ¶ 31. Additionally,

Plaintiff asserts that Defendant "impermissibly obtained and used Plaintiff's consumer reports" from credit reporting agencies. *Id.* ¶ 66.

1.      Communications by Defendant[2]

During the bankruptcy proceedings, Plaintiff alleges, Defendant sent Plaintiff a number of billing statements ("Billing Statements"), which contained "detachable payment coupons," demanded an amount of payment, and set a payment due date. *Id.* ¶ 33. Further, Plaintiff also states that Defendant sent "solicitations for loss mitigation" on the accounts ("Loss Mitigation Letters"), which offered "options to avoid foreclosure" and "included lengthy application forms for these options . . . ." *Id.* ¶ 34. Additionally, Plaintiff alleges that on April 25, 2018, Defendant's attorneys, Gilbert Garcia Group, P.A., mailed Plaintiff "a debt validation letter" that provided Plaintiff with thirty days to dispute the validity of her debt ("Gilbert Letter"). *Id.* ¶ 37. Finally, Plaintiff indicates that on May 17, 2018, Defendant's agent, Security First Insurance, sent Plaintiff a letter prompting renewal of her insurance policy on the Property ("Policy Renewal Letter"). *Id.* ¶ 39.

After the bankruptcy court entered its discharge order, Plaintiff alleges, Defendant sent additional communications attempting to collect on Plaintiff's debt. *Id.* ¶ 42. First, Plaintiff describes three Billing Statements sent by Defendant after the discharge. *Id.* ¶¶ 43–47. Next, Plaintiff alleges that Defendant sent her more Loss Mitigation Letters "to coerce her to send Defendant her confidential information and pay the discharged debt." *Id.* ¶ 54; *see also id.* ¶¶ 49–56. Moreover, through Security First Insurance, Plaintiff explains, Defendant sent Plaintiff three different letters ("Hazard Insurance Letters") pertaining to insurance coverage on the Property subject to the

---

[2] Though the Court summarizes Plaintiff's allegations here, the Court will discuss the communications pertinent to the Court's holdings in greater detail in Section III of this Order.

discharged debt. *Id.* ¶¶ 57–62. Lastly, Plaintiff alleges that Defendant sent Plaintiff two post-discharge emails. *Id.* ¶¶ 63–65.

      2.     Defendant's use of consumer reports

Plaintiff further alleges that despite the discharge order, Defendant "impermissibly obtained and used Plaintiff's consumer reports[.]" *Id.* ¶ 66. Specifically, Plaintiff states that on four different occasions, "Defendant . . . accessed Plaintiff's confidential credit file" from a credit reporting agency and used this "consumer report without a legally permissible purpose." *Id.* ¶¶ 7, 67–70. To gain access to the reports, Plaintiff alleges, Defendant "furnished false information" to the credit reporting agency. *Id.* ¶ 73.

As a result of both the alleged debt-collection attempts and the use of Plaintiff's consumer reports, Plaintiff brought suit against Defendant. *See* Doc. 1, Compl. In her first amended complaint, Plaintiff brings claims for: (1) violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*; (2) violations of provisions of the Texas Debt Collection Act (TDCA); (3) invasion of privacy under Texas law; and (4) violations of the automatic stay imposed in her bankruptcy case under 11 U.S.C. § 362. Doc. 15, FAC, ¶¶ 74–113.

On February 6, 2020, Defendant moved to partially dismiss several of these claims, as explained in greater detail below. *See generally* Doc. 17, Def.'s Mot. The Court has received all briefing on Defendant's motion; thus, it is now ripe for review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up).

III.

ANALYSIS

In her complaint, Plaintiff brings several claims against Defendant: (1) violations of the FCRA; (2) violations of provisions of the TDCA, including Texas Finance Code §§ 392.301(a)(8), 392.304(a)(3), 392.304(a)(8), 392.304(a)(13), and 392.304(a)(19); (3) invasion of privacy under Texas law; and (4) violations of the automatic stay imposed in her bankruptcy case under 11 U.S.C. § 362. Doc. 15, FAC, ¶¶ 74–113.

Defendant moves to dismiss all of these claims, except Plaintiff's claim under § 392.304(a)(13), "to the extent they are based on allegations that Defendant attempted to collect on a discharged debt." Doc. 17, Def.'s Mot., 2, 7–8. Moreover, Defendant asserts an additional ground for dismissal of Plaintiff's § 392.304(a)(8) claim—that Plaintiff has not alleged that Defendant's actions "led her to think differently about the character, extent, amount or status of her debt." Doc. 17, Def.'s Mot., 2.

Below, the Court addresses Defendant's arguments claim by claim. The Court turns first to Plaintiff's FCRA claim, followed by the TDCA claims, invasion-of-privacy claim, and, finally, Plaintiff's claim for a violation of the automatic stay.

In sum, the Court denies Defendant's motion to the extent it seeks dismissal of Plaintiff's claims based on Plaintiff's failure to allege an attempt at debt collection. Further, while the Court grants Defendant's motion insofar as it urges dismissal of Plaintiff's § 392.304(a)(8) claim due to her failure to plead the effect of Defendant's actions, the Court grants Plaintiff leave to amend this claim.

A.      *Fair Credit Reporting Act Claim*

Plaintiff brings an FCRA claim premised upon Defendant's accessing of Plaintiff's credit file and obtaining her consumer reports after the bankruptcy discharge. Doc. 15, FAC, ¶¶ 75–76, 80, 88. According to Plaintiff, Defendant's purpose in obtaining this access was "to have information about such inquiries reported on Plaintiff's credit reports for her to see to deceive her into believing the Account(s) were still open, due and collectible"; to "gather information about [Plaintiff] from her confidential credit file"; and to "ultimately coerce payment from Plaintiff of the discharged debt." *Id.* ¶¶ 82–83.

Defendant seeks dismissal of Plaintiff's claim under the FCRA "to the extent [it is] based on allegations that Defendant attempted to collect on a discharged debt," but Defendant also indicates that it does not challenge the "alleged account reviews and credit pulls . . . ." Doc. 20, Def.'s Reply, 2.

Because the conduct forming the basis of Plaintiff's FCRA claim is the alleged account reviews and credit pulls, see Doc. 15, FAC, ¶¶ 75–76, 80, 88, the Court **DENIES** Defendant's motion to the extent it seeks dismissal of Plaintiff's FCRA claim.

B.      *Texas Debt Collection Act Claims*

"The [TDCA] generally prohibits use of deceptive means, making misrepresentations, harassment, and threats in the course of collecting a consumer debt." *Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1009 (N.D. Tex. 2013) (citing Tex. Fin. Code § 392.301, *et seq.*). To prevail on a TDCA claim, a plaintiff must demonstrate: "(1) the debt is a consumer debt; (2) the defendant is a debt collector, as defined under the [TDCA]; (3) the defendant committed a wrongful act in violation of the [TDCA]; (4) the wrongful act was committed against the plaintiff; and (5) the

plaintiff was injured as a result of the defendant's wrongful act." *Jackson v. Wells Fargo Home Mortg.*, 2019 WL 3606463, at *7 (N.D. Tex. July 17, 2019) (citing Tex. Fin. Code §§ 392.001–.404). "'Debt collection' means an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code § 392.001(5).

Defendant moves to dismiss Plaintiff's TDCA claims to the extent they rely upon Plaintiff's allegation that Defendant attempted "to collect on a discharged debt," arguing that the documentation underlying this allegation demonstrates that Defendant was not attempting to collect a debt. Doc. 17, Def.'s Mot., 4–6. The Court addresses this argument in the context of each of Plaintiff's TDCA claims at issue below.

### 1.   Claim under Section 392.301(a)(8)

First, the Court addresses Plaintiff's claim under § 392.301(a)(8), which states, "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices . . . [including] threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). Plaintiff alleges that Defendant violated this provision by "sending Plaintiff post-discharge statements and correspondences"; "impermissibly obtaining or using Plaintiff's consumer reports"; threatening "to report a post-discharge delinquency status" through the Loss Mitigation Letters; and representing, in the Loss Mitigation Letters, that Plaintiff "still may be liable to pay off what [she] owe[d] on the home" after foreclosure. Doc. 15, FAC, ¶ 96(a).

In its motion, Defendant challenges this TDCA claim to the extent it relies upon Plaintiff's allegation that Defendant attempted "to collect on a discharged debt," arguing that the communications underlying this allegation show that Defendant was not attempting to collect a debt.

-8-

Doc. 17, Def.'s Mot., 4–6; *see* Tex. Fin. Code § 392.301(a)(8) (prohibiting threats to take illegal action "[i]n debt collection").[3]

For support, Defendant points out that the Billing Statements, Loss Mitigation Letters, and Hazard Insurance Letters contain language indicating that Defendant was not attempting to collect a debt. Doc. 17, Def.'s Mot., 4–5. Plaintiff, however urges the Court to consider this disclaimer language in context, arguing that it "was self-serving and contradictory to the other language" in the documents. Doc. 18, Pl.'s Resp., 2–3.[4]

Here, the issue is whether the conduct alleged by Plaintiff amounts to "debt collection" for purposes of § 392.301(a)(8). The parties have not cited, nor has this Court discovered, instructive case law on applying the definition of "debt collection" set forth in the TDCA. Nonetheless, the Court finds two cases, which analyze claims for violations of post-discharge injunctions, to be helpful in determining whether the statements sent by Defendant constitute debt collection.

In the first case, *In re Roth*, the Eleventh Circuit considered whether a monthly mortgage statement was an attempt to collect a discharged debt in violation of a post-discharge bankruptcy injunction. 935 F.3d 1270, 1272–73 (11th Cir. 2019). The plaintiff in *Roth* filed for Chapter 13 bankruptcy, and in the course of the bankruptcy proceedings, the bankruptcy court discharged her

---

[3] In its motion, Defendant does not contest the presence of a threat to support this TDCA claim. *See* Doc. 17, Def.'s Mot., 1–5.

[4] Defendant also suggests that because the language at issue is "virtually identical" to language on a sample form for a "Periodic Statement for Consumer in Chapter 7 or Chapter 11 Bankruptcy" provided in an appendix of a federal regulation, see 12 C.F.R. § 1026, App. H-30(E) (2018), the language does not violate federal law. Doc. 17, Def.'s Mot., 5; Doc. 20, Def.'s Reply, 2. Given that the Court is applying Texas law here, it need not address Defendant's passing contention. And in any event, Defendant does not contest Plaintiff's arguments that: (1) the federal regulation Defendant cites "pertains [only] to sending periodic statements"; and (2) Defendant was exempt from the requirements of this regulation. Doc. 18, Pl.'s Resp., 3–4; *see generally* Doc. 20, Def.'s Reply.

debt on a mortgage. *Id.* at 1273. In its discharge order, the bankruptcy court prohibited creditors from attempting to collect a debt from the plaintiff. *Id.* Despite receiving notice of this discharge, the defendant sent the plaintiff an "Information Statement" regarding her mortgage. *Id.* Though the statement included a disclaimer indicating that the defendant was not attempting to collect a discharged debt, it also "contained an amount due, due date, and instructions for how to pay [the defendant] . . . ." *Id.* Based on the statement, the plaintiff filed a motion for sanctions against the defendant for attempting to collect a discharged debt. *Id.* at 1274.

Reviewing the bankruptcy court's decision that the statement was "informational"—not an attempt at debt collection—the Eleventh Circuit in *Roth* affirmed. *Id.* at 1273–74, 1276. As a preliminary matter, the Eleventh Circuit was not applying Texas law; rather, it was examining "whether the objective effect of [the defendant's] action [was] to pressure [the plaintiff] to repay a discharged debt." *Id.* at 1276 (citation omitted). Applying this standard, the Eleventh Circuit noted that the disclaimer language at issue was "printed in bold on the first page of the statement." *Id.* Further, the court pointed out that the disclaimer twice indicated that the statement was not a debt-collection attempt, and "the included payment coupon [was] marked in large lettering as 'voluntary.'" *Id.* In light of these facts, the court reasoned that the "amount due" and "due date" language in the statement did "not diminish the effect of the prominent, clear, and broadly worded disclaimer." *Id.* Finally, the court explained that the plaintiff still had the option to repay her mortgage debt because the defendant "had not completed a foreclosure on the property." *Id.* Under these circumstances, the Eleventh Circuit held that the statement was not an unlawful debt-collection attempt. *Id.*

In contrast, in *Bibolotti v. American Mortgage Servicing Inc.*, a district court in the Eastern District of Texas found that similar disclaimer language in the defendant's communications did not protect the defendant from allegations of debt collection. *See* 2013 WL 2147949, at *11–12 (E.D. Tex. May 15, 2013). Like the Eleventh Circuit in *Roth*, the district court in *Bibolotti* was examining whether the defendants' communications were an attempt to collect on a debt in violation of a bankruptcy court's discharge order—not in violation of the TDCA. *See id.* at *8.[5] In *Bibolotti*, the defendants, either by phone or mail, contacted or tried to contact the plaintiff fifteen times after the imposition of the discharge injunction. *Id.* at *10. Analyzing each specific contact, the court ultimately concluded that seven statements mailed to the plaintiff were "acts to collect a debt . . . ." *Id.* at *11–12.

Of relevance here, the first four statements sent by the defendants in *Bibolotti* were letters explaining that the interest rate on the plaintiff's adjustable mortgage had changed or was going to change. *Id.* at *10–11. Although the defendants pointed out that the letters contained disclaimer language and did not explicitly demand payment, the district court found this argument "unpersuasive": though the letters did not contain "magic words" directing payment, "everything else in the letters constitute[d] a demand for payment[.]" *Id.* at *12. Specifically, the letters "contain[ed] the payment due date, the amount of payment, the outstanding balance, and the interest rate used to calculate the payment amount." *Id.* Further, the letters informed the plaintiff that installments were due and specified an amount of the outstanding balance. *Id.*

---

[5] Though the district court in *Bibolotti* dismissed the plaintiff's TDCA claims arising from the communications, the court did not address whether the defendant's actions constituted "debt collection" for TDCA purposes. *See id.* at *17–18.

"This additional information," the court in *Bibolotti* reasoned, "transform[ed] the letter[s] from . . . informational letter[s] . . . into [letters] intended to coerce [the plaintiff] into entering a loan modification . . . ." *Id.* Additionally, the court pointed out that the disclaimer language was "not conspicuously located"; rather, it was "located at the end of the letter[s] on the second page, and [was] not distinguishable in any way from the other text contained in the letter[s]." *Id.* at *14. Moreover, the court noted that the plaintiff had vacated the property subject to the mortgage, and the defendants knew of his intention to surrender the property in bankruptcy. *Id.* at *13–14. Based on these factors, among others, the court granted summary judgment in the plaintiff's favor on his claim that the defendants violated the discharge injunction. *Id.* at *16.

Though the courts in *Roth* and *Bibolotti* analyzed debt collection for purposes of a violation of a discharge order, rather than for purposes of TDCA liability, the Court finds them persuasive for drawing a line between statements that constitute debt collection—those in *Bibolotti*, and statements that provide information—those in *Roth*. Specifically, in *Roth*, the disclaimer language was in bold print on the first page of the statement, whereas in *Bibolotti*, the disclaimer language was on the second page of the statement and was not distinguishable from the rest of the text. *See Roth*, 935 F.3d at 1276; *Bibolotti*, 2013 WL 2147949, at *14. Further, in *Roth*, the statement contained a payment coupon marked "voluntary," while in *Bibolotti*, "everything else in the letters constitute[d] a demand for payment[.]" *Roth*, 935 F.3d at 1276; *Bibolotti*, 2013 WL 2147949, at *12. Finally, in *Roth*, the court noted that the plaintiff could still repay her mortgage since foreclosure had not yet occurred. 935 F.3d at 1276. In contrast, in *Bibolotti*, the court emphasized that the plaintiff had already vacated the property and noticed his intention to surrender it in bankruptcy. *Bibolotti*, 2013 WL 2147949, at *13–14.

Applying this guidance at the motion-to-dismiss stage of proceedings, the Court concludes that the October 17, 2018 Billing Statement ("October Billing Statement") supporting Plaintiff's claim under § 392.301(a)(8) aligns closer to the statements at issue in *Bibolotti* and thus likely constitutes debt collection. Turning to the October Billing Statement, it twice lists a payment amount and a payment due date. *See* Doc. 15-1, App., 66 (Ex. H). Though it contains disclaimer language on the same page, the disclaimer appears in font smaller than the bolded font listing the payment amount and payment due date. *See id.* Further, the disclaimer is also significantly smaller than the language above the payment coupon, which directs Plaintiff to "detach and return this portion with [her] payment." *Id.* And unlike the payment coupon in *Roth* deeming payment "voluntary," there is no such description in the payment coupon here. *See Roth*, 935 F.3d at 1276; Doc. 15-1, App., 66 (Ex. H). Finally, Defendant does not dispute that as of the October Billing Statement date, October 17, 2018, Defendant knew that Plaintiff had vacated and surrendered the Property at issue like the plaintiff in *Bibolotti*. *See Bibolotti*, 2013 WL 2147949, at *13–14; Doc. 15, FAC, ¶ 105; *see generally* Doc. 17, Def.'s Mot.

Under these circumstances, the Court concludes that Plaintiff has sufficiently alleged a violation of § 392.301(a)(8) based upon a debt-collection attempt by Defendant and **DENIES** Defendant's motion to dismiss this claim.[6]

---

[6] Because the Court concludes that Plaintiff's claim under § 392.301(a)(8), premised upon Defendant's post-discharge debt collection, is viable based on the October Billing Statement, the Court declines to address the remaining alleged communications supporting this claim.

2.      Claim under Section 392.304(a)(3)

Section 392.304(a)(3) prohibits debt collectors, "in debt collection or obtaining information concerning a consumer," from "us[ing] a fraudulent, deceptive, or misleading representation that employs the following practices . . . [including] representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer[.]" Tex. Fin. Code § 392.304(a)(3). Plaintiff alleges that Defendant violated this provision of the TDCA by sending the Loss Mitigation Letters, which instructed Plaintiff to complete an application that would qualify her for loss mitigation. Doc. 15, FAC, ¶ 96(b). These Loss Mitigation Letters, Plaintiff believes, were sent "to obtain her personal and confidential information," given that "Defendant knew Plaintiff did not qualify for a modification" in light of her surrender and vacatur of the property. *Id.*

Defendant challenges this TDCA claim, like the others, to the extent it relies upon Plaintiff's allegation that Defendant attempted "to collect on a discharged debt," arguing that the language of the documentation underlying this allegation suggests otherwise. Doc. 17, Def.'s Mot., 4–6. Specifically with respect to the Loss Mitigation Letters, Defendant contends that their language makes it clear that Defendant was not attempting to collect a debt, as the Letters state that they are "not an attempt to get [Plaintiff] to pay." *Id.* at 5 (quoting Doc. 15-1, App. (Ex. E)).

The issue here is whether Plaintiff has stated a claim for relief under § 392.304(a)(3) premised upon a misrepresentation made in the course of debt collection. *See* Tex. Fin. Code § 392.304(a)(3). Examining the Loss Mitigation Letters, the Court notes that three of the four letters begin by stating: "We know you're in bankruptcy, and this is not an attempt to get you to pay." Doc. 15-1, App., 73 (Ex. K), 115 (Ex. M), 121 (Ex. N). Further, at the bottom of the page, in smaller font,

each letter notes, "If you have an active bankruptcy, or if you received a bankruptcy discharge, we are sending you this for informational or legal purposes only. We're not trying to collect against you personally." *See id.* But the letter dated January 4, 2019 ("January Mitigation Letter"), though containing an identical disclaimer at the bottom of the page, opens not with a disclaimer, but instead with the following: "Your mortgage payment is 399 days or more past due, and your loan is in default." *Id.* at 110 (Ex. L). Like the other letters, the January Mitigation Letter thereafter prompts Plaintiff to complete an application. *See id.*

Based on the January Mitigation Letter, the Court concludes Plaintiff has sufficiently alleged that Defendant made a misrepresentation in the course of debt collection.

First, while the January Mitigation Letter does not prompt payment by Plaintiff like the October Billing Statement, the January Mitigation Letter's disclaimer is small and inconspicuous, and the Letter opens with the implication that Plaintiff owes money. *See id.* Because the Court views the facts in the light most favorable to Plaintiff, the Court finds that the January Mitigation Letter's inconspicuous disclaimer and suggestion that Plaintiff owes money is sufficient, for purposes of resolving Defendant's motion, to demonstrate debt collection. *See supra* Section III.B.1.

Second, though loan modification communications are not "[g]enerally" concerned with debt collection, the Fifth Circuit has "previously indicated that modification discussions may constitute debt collection activities under the TDCA when those discussions are used as a ruse to collect debt." *Strong v. Green Tree Servicing*, 716 F. App'x 259, 264–65 (5th Cir. 2017) (per curiam) (citations omitted). Here, Plaintiff alleges that "Defendant knew Plaintiff did not qualify for a modification," and yet "made false representations . . . to obtain [Plaintiff's] personal and confidential information to further Defendant's illegal post-discharge collection efforts . . . ." Doc. 15, FAC, ¶ 96(b).

Accordingly, Plaintiff has sufficiently alleged that the January Mitigation Letter was such a ruse. *See Strong*, 716 F. App'x at 264–65. Thus, based on the January Mitigation Letter, the Court **DENIES** Defendant's partial motion to dismiss Plaintiff's § 392.304(a)(3) claim.[7]

       3.      <u>Claim under Section 392.304(a)(8)</u>

Next, Plaintiff asserts that Defendant violated § 392.304(a)(8), which forbids debt collectors, "in debt collection or obtaining information concerning a consumer," from "us[ing] a fraudulent, deceptive, or misleading representation that employs the following practices . . . [including] misrepresenting the character, extent, or amount of a consumer debt[.]" Tex. Fin. Code § 392.304(a)(8). Plaintiff supports this TDCA claim through a variety of allegations: the "impermissible account review inquiries," which Defendant knew would be reported on Plaintiff's credit reports; the post-discharge Billing Statements; the post-discharge Loss Mitigation Letters; and the post-discharge Hazard Insurance Letters. Doc. 15, FAC, ¶ 96(c).

Defendant first moves to dismiss this claim insofar as it relies upon Plaintiff's allegation that Defendant attempted "to collect on a discharged debt," arguing, again, that the documentation underlying this allegation demonstrates that Defendant was not attempting to collect a debt. Doc. 17, Def.'s Mot., 4–6.

---

[7] While Defendant focuses exclusively on whether Plaintiff has sufficiently alleged "debt collection" to support her claim under § 392.304(a)(3), Plaintiff alleges that "Defendant made false representations [in the Loss Mitigation Letters] to Plaintiff *to obtain her personal and confidential information* . . . ." Doc. 15, FAC, ¶ 96(b) (emphasis added). Accordingly, one of Plaintiff's theories of recovery hinges upon an allegation that Defendant sought to obtain her personal information—rather than that "Defendant attempted to collect on a discharged debt[.]" *See* Doc. 20, Def.'s Reply, 2. Given that § 392.304(a)(3) applies both to misrepresentations made in "in debt collection" and in "obtaining information concerning a consumer," Plaintiff has also sufficiently alleged a claim under § 392.304(a)(3) based upon the Loss Mitigation Letters to the extent she alleges Defendant made its misrepresentation while obtaining information about Plaintiff. *See Strong*, 716 F. App'x at 265 n.7 (recognizing that § 392.304(a) permits two different theories of recovery).

But the Court has already concluded above that Defendant did engage in communications that could constitute debt collection—namely, the October Billing Statement and the January Mitigation Letter. *See supra* Sections III.B.1, III.B.2. Given that Plaintiff relies upon these statements, among others, to support her claim under § 392.304(a)(8), the Court **DENIES** Defendant's partial motion to dismiss this claim based on Defendant's debt-collection argument.

Nonetheless, Defendant also contends that the Court should dismiss this claim based on Plaintiff's failure to allege "that Defendant led her to think differently about the character, extent, amount, or status of her debt." Doc. 17, Def.'s Mot., 7 (citing *Miller v. BAC Home Loan Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)).

The Court agrees. "To state a viable claim for a violation of section 392.304(a)(8), Plaintiff must demonstrate that [Defendant] made a false or misleading statement that 'led [her] to think differently with respect to the character, extent, amount, or status of [her] debt.'" *Ingram v. Beneficial Fin., Inc.*, 2015 WL 1443110, at *9 (N.D. Tex. Mar. 30, 2015) (alteration in original) (quoting *Miller*, 726 F.3d at 723); *see also Smither v. Ditech Fin., L.L.C.*, 681 F. App'x 347, 354–55 (5th Cir. 2017) (per curiam) (citation omitted) (requiring a plaintiff pleading a § 392.304(a)(8) claim to "plausibly allege a misrepresentation led . . . her to be unaware" of her debt, the amount owed, or that she defaulted). Though Plaintiff suggests in her response that she "believed she might owe on the Account(s) which she has alluded to in pleading damages for 'mental anguish and emotional distress,'" she does not explain this in her complaint. Doc. 18, Pl.'s Resp., 13–14; *see* Doc. 15, FAC, ¶ 96(c). Plaintiff's generalized allegations of mental and emotional distress do not lead the Court to reasonably infer that Plaintiff thought differently about "the character, extent, amount, or status"

of her debt. *Ingram*, 2015 WL 1443110, at *9 (citation omitted). Accordingly, Plaintiff has not sufficiently pled her claim under § 392.304(a)(8).

To remedy this deficiency, Plaintiff seeks to leave to amend. Doc. 18, Pl.'s Resp., 14. Defendant, however, contends that because Plaintiff has already amended her complaint once in response to Defendant's first motion to dismiss, any amendment now "would be futile." Doc. 17, Def.'s Mot., 3.

Because this is Plaintiff's first request for leave to amend, and the Court is not convinced that any amendment would necessarily be futile, the Court grants Plaintiff leave to amend her § 392.304(a)(8) claim and thus **DISMISSES** the claim **WITHOUT PREJUDICE**.

### 4.    Claim under Section 392.304(a)(19)

Plaintiff brings her final TDCA claim at issue under § 392.304(a)(19). This catchall provision states: "[I]n debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices . . . [including] using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code § 392.304(a)(19). Plaintiff alleges that Defendant violated § 392.304(a)(19) by attempting "to coerce or deceive Plaintiff into paying the debt, while Defendant knew the Account was discharged in Plaintiff's bankruptcy[.]" Doc. 15, FAC, ¶ 96(e). To support this claim, Plaintiff cites to the conduct alleged to support her other TDCA claims. *See id.*

Defendant, again, challenges this TDCA claim to the extent it relies upon Plaintiff's allegation that Defendant attempted "to collect on a discharged debt," arguing that the

-18-

communications underpinning this allegation demonstrate that Defendant was not attempting to collect a debt. Doc. 17, Def.'s Mot., 4–6.

The Court has already found that Defendant engaged in communications—the October Billing Statement and the January Mitigation Letter—that could qualify as debt collection. *See supra* Sections III.B.1, III.B.2. Given that Plaintiff relies upon these statements, among others, to support her claim under § 392.304(a)(19), the Court **DENIES** Defendant's partial motion to dismiss this claim based on Defendant's debt-collection argument.

C.     *Invasion-of-Privacy Claim Under Texas Law*

Next, Plaintiff brings an invasion-of-privacy claim against Defendant. Doc. 15, FAC, ¶¶ 99–102. Plaintiff alleges two grounds to support her invasion-of-privacy claim: (1) Defendant's access of Plaintiff's credit file; and (2) Defendant's sending of post-discharge "letters, notices and statements" to Plaintiff "to coerce payment of the discharged debt[.]" *Id.* ¶¶ 100–01. Plaintiff states that the latter conduct "would be highly offensive to a reasonable person because Defendant was forbidden to contact Plaintiff post-discharge regarding the subject discharged debt . . . ." *Id.* ¶ 101. Moreover, according to Plaintiff, the fact that Defendant's contacts persisted even after foreclosure further suggests that they were offensive. *See id.*

In its motion, Defendant moves to dismiss the invasion-of-privacy claim to the extent that it is based on Defendant's alleged coercion of payment, again arguing that Defendant was not attempting to collect a debt. Doc. 17, Def.'s Mot., 7–8. Plaintiff, in response, asserts that she does not allege "specific debt collection" activities "as a basis of her claim," and she requests that the Court grant her leave to amend "to the extent the Court finds this needs to be clarified." Doc. 18, Pl.'s Resp., 21.

Texas law recognizes, based on the common law right to privacy, a claim for intrusion upon the seclusion of another. *Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 116 (Tex. 2011) (citing *Billings v. Atkinson*, 489 S.W.2d 858, 859–60 (Tex. 1973) ("An unwarranted invasion of the right of privacy constitutes a legal injury for which a remedy will be granted.")). An intrusion-upon-seclusion claim requires the plaintiff to show: "(1) that the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs or concerns; and (2) that such intrusion would be highly offensive to a reasonable person." *Cherkaoui v. Santander Consumer USA, Inc.*, 2013 WL 12328769, at *2 (S.D. Tex. June 7, 2013) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)).

Here, the Court has doubts about whether Defendant's communications rise to the level of a "highly offensive," "intentional intrusion" into Plaintiff's private affairs. *Valenzuela*, 853 S.W.2d at 513; *see Bray v. Cadle Co.*, 2010 WL 4053794, at *16 (S.D. Tex. Oct. 14, 2010) ("[T]here need not be a *physical* intrusion to state a claim for intrusion on seclusion under Texas law. However, Texas courts have held that '[i]ntrusion upon seclusion is typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.'") (emphasis in original) (citations omitted); *but see London v. Gums*, 2014 WL 546914, at *1, *12 (S.D. Tex. Feb. 10, 2014) (imposing liability upon the defendant for the plaintiff's intrusion-upon-seclusion claim where "the number of harassing phone calls coupled with the threat of jail was unreasonable and would be highly offensive to a reasonable person").

Nevertheless, Defendant seeks dismissal of this claim based only on its argument that "Defendant was not attempting to collect on the debt." *See* Doc. 17, Def.'s Mot., 8. Since the Court

has already rejected this argument, *see supra* Section III.B, the Court **DENIES** Defendant's partial motion to dismiss Plaintiff's intrusion-upon-seclusion claim.

D.     *Claim of Violation of the Automatic Stay*

Finally, Plaintiff alleges Defendant violated the automatic stay by sending the correspondences at issue during the pendency of Plaintiff's bankruptcy case. Doc. 15, FAC, ¶ 109 (citing *id.* ¶¶ 31–41).

The filing of a Chapter 7 bankruptcy petition functions as an automatic stay of "the commencement or continuation . . . of [an] action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case], or to recover a claim against the debtor that arose before the commencement of the case" during the pendency of the stay. 11 U.S.C. § 362(a)(1); *see also In re Small*, 486 F. App'x 436, 439 (5th Cir. 2012) (per curiam) (explaining other actions that are automatically stayed as a result of the filing of a Chapter 7 petition).

"There are three elements to a claim for violation of the stay: '(1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay.'" *Small*, 486 F. App'x at 439 (quoting *Brown v. Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005)).

Because Defendant believes that the activities at issue were not debt-collection activities, and thus argues that it did not violate the automatic stay, Defendant moves to dismiss this claim based on Plaintiff's failure to satisfy the third element. *See* Doc. 17, Def.'s Mot., 6–7.

Accordingly, the Court now analyzes whether Plaintiff has sufficiently alleged a violation of the automatic stay. As an initial matter, Plaintiff alleges that the automatic stay, for notice purposes,

was in force from February 15, 2018, to May 24, 2018. *See* Doc. 15, FAC, ¶¶ 17, 25.[8] In her complaint, Plaintiff alleges the following communications occurred during this time period: the Billing Statements; a Loss Mitigation Letter; the Gilbert Letter, dated April 25, 2018; and the Policy Renewal Letter, dated May 17, 2018. *Id.* ¶¶ 105, 33, 34–35, 37, 39.

Based on Plaintiff's allegations and exhibits, none of the Billing Statements were sent between February 15, 2018, and May 24, 2018. *Compare id.* ¶ 33 (stating that Defendant sent Billing Statements during the pendency of the bankruptcy case), *with id.* ¶¶ 43–46 and Doc. 15-1, App., 66–72 (Exs. H, I, J) (alleging Billing Statements dated October 17, 2018; January 8, 2019; and February 7, 2019). Thus, the Court need only examine whether the Loss Mitigation Letter, Gilbert Letter, or Policy Renewal Letter constitutes debt collection.

Though the Gilbert Letter contains conflicting language, the Court holds that it is, for purposes of this motion, a debt-collection attempt by Defendant. The Gilbert Letter opens with the following:

> The above referenced loan has been placed with the law firm of Gilbert Garcia Group, P.A. ("Gilbert Garcia") for foreclosure. This correspondence is being sent by Gilbert Garcia to comply with the Fair Debt Collection Practices Act. This correspondence is not a payoff quote or a demand for payment or money from you, and should not be interpreted or construed as a payoff letter or demand for payment or money from you by Gilbert Garcia.

---

[8] Plaintiff alleges that on April 12, 2018, the automatic stay was lifted as to Defendant "to allow it to take possession of the Property and proceed with foreclosure proceedings against it . . . ." *Id.* ¶¶ 20–22. Plaintiff argues, however, that "even where the automatic stay has been lifted *as to collateral*, the automatic stay remains firmly in place *as to the debtor*." Doc. 18, Pl.'s Resp., 20 (emphasis in original) (citation omitted). In its reply, Defendant does not dispute this point. *See generally* Doc. 20, Def.'s Reply. Accordingly, in analyzing whether Defendant violated the automatic stay, the Court considers Plaintiff's allegations for the entire period of the automatic stay, February 15, 2018, to May 24, 2018.

Doc. 15-1, App., 46 (Ex. F). The Gilbert Letter thereafter lists the amount of debt; the name of the creditor to whom Plaintiff owes the debt; and instructions for disputing the validity of the debt. *Id.* at 46–47. Further, the penultimate paragraph of the Gilbert Letter states, "If this debt has been discharged in a bankruptcy, and you have not reaffirmed this debt, then this communication is for notice purposes only in connection with the foreclosure of the above referenced property, and we are not attempting to collect the debt from you personally." *Id.* at 47.

But on the bottom of each page of the Gilbert Letter, there is a bolded statement, in capitalized letters, which reads, "THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Id.* at 46–47.

In light of this conspicuous statement, the Court concludes that Plaintiff has sufficiently alleged a debt-collection attempt by Defendant based upon the Gilbert Letter. The Court recognizes, as Defendant points out, that "[t]here is no demand anywhere in the letter that Plaintiff pay the debt." Doc. 17, Def.'s Mot., 6 (citation omitted). Nonetheless, the Court cannot ignore the language, which is clearly emphasized in the Gilbert Letter, indicating that the Gilbert Letter *is* an attempt to collect a debt. Viewing the facts in the light most favorable to Plaintiff, the Court holds that Plaintiff has sufficiently alleged a debt-collection effort—namely, the Gilbert Letter—by Defendant during the automatic stay.[9] Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's claim of a violation of the automatic stay.

---

[9] In light of this conclusion, the Court need not reach the issue of whether the remaining communications alleged by Plaintiff, the Loss Mitigation Letter and the Policy Renewal Letter, are attempts by Defendant to collect debt during the automatic stay.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss (Doc. 17) Plaintiff's claims to the extent they rest upon an allegation of debt collection. But the Court **GRANTS** Defendant's motion (Doc. 17) insofar as Defendant seeks dismissal of Plaintiff's TDCA claim under § 392.304(a)(8) based on her failure to allege that Defendant's actions led her to think differently about her debt. Accordingly, the Court **DISMISSES** this claim **WITHOUT PREJUDICE**. Further, the Court **GRANTS** Plaintiff's request for leave to amend her § 392.304(a)(8) claim and **ORDERS** Plaintiff to file a second amended complaint, which amends only this claim, within **FOURTEEN DAYS** of the date of this Order.

SO ORDERED.

SIGNED: April 18, 2020.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE